When you're ready, Mr. Phillips. Thank you. And may it please the Court, it's always enjoyable taking a stroll down memory lane and going back to first-year law school and thinking about worldwide Volkswagen and personal jurisdiction. Let me just give you a little bit of background in context that I think will make the personal experience a little more understandable. In the late 90s, Dr. Adams, the inventor here, discovered that there was data corruption in computers. And as a result of his work, there was a $2.1 billion settlement in 1999 that Toshiba paid for its defective computers. He was the only person who had this technology. After that settlement, honorable companies like Hewlett-Packard came and licensed this Compaq agreed to pay $30 million. There were other computer companies that simply took his technology and used his technology to test their computers, whether there was data corruption in them and whether they used his technology to fix the data corruption in their computers. One of these companies is Asus Technology. And Asus is probably not a well-known brand, but it's becoming more and more a well-known brand. They sell laptop computers, desktop computers. They make all kinds of other products, and the allegation in the lawsuit is that Asus tested all of its computer products using Dr. Adams' technology and used his technology to fix their computers. And Dr. Adams, he resided in Las Vegas, Nevada. He moved to Afton, Wyoming, to Star Valley, and they make a big deal about there's something nefarious about wanting to move from Las Vegas to Star Valley, Wyoming, and I would submit that there's nothing nefarious about that. But the lawsuit was filed in Wyoming, where Dr. Adams lived, and the undisputed evidence admittedly is that Asus sells computer products into Wyoming. It's wholly owned subsidiary and distributor, ACI. But the test we're applying here for specific personal jurisdiction is a targeting test. It is. Did they target Wyoming? And so can you give us any indication, any facts in the record that says they were shooting from across the Pacific Ocean and aiming at Wyoming? Well, two things. First of all, we weren't allowed to conduct any jurisdictional discovery, even though the magistrate judge gave us 60 days to do that. Okay, fine. And you're going to get the full benefit of all of those allegations. But you still have to allege that you were shooting at Wyoming. Not just shooting generally at the United States, but shooting at Wyoming. Were you? And the evidence is, yes, because their distributor, admittedly in the record, shipped at least 20 times products to residents of Wyoming, which we allege were infringing products. Their other subsidiary of Pegatron, PTF, they admitted shipped products to residents of Wyoming. And if you go back to- Did you tie those products to any allegations of an infringing item? Our allegation in the complaint is all of those products infringe the inventor's patents because they needed to test all of those products to see whether they had data corruption on them. We weren't allowed to do any discovery as to find out exactly which model of a laptop was sent to a resident of Wyoming, which chip was in it, and things like that. But the allegation in the complaint was that all of those computers and products are infringing. Can you point me to the language in the complaint where you say that? In the complaint, we allege, in general, we named several defendants in a case, but if you look at paragraph 16, defendants have infringed various claims of each of the patents in suit in violation of 35 U.S.C. section 271 through, among other activities, the manufacturer used importation, sale, and or offer for sale of computer chips, motherboards, computers, and other products, as well as using infringing methods, including but not limited testing of defendant's products as a part of the manufacturing process. Then we allege that they intentionally induced others, such as customers and end users, to infringe the patents. I will concede there is no specific allegation in the complaint that they targeted Wyoming. Don't you have to have that? I mean, there's no invoice, there's no employees, there's no offices, there's no presence, there's no cartons addressed to Wyoming. Don't you have to have something that says we were aiming at Wyoming? Well, we do, Your Honor, because they admitted in filing their opposition that they made 20 shipments to residents of Wyoming of computer products, that PTS of Pegatron made shipments there. One of the things, the first things we were going to do is do jurisdictional discovery and find out exactly what those products were. Yeah, you keep mentioning that discovery issue, but the reality is that your meeting with the magistrate judge didn't occur until long after the district court pulled this issue back from the magistrate, and you never went to the district court and said, don't rule on the jurisdictional motion until we've had a chance for discovery. You never asked the district court for discovery, did you? We did at the initial scheduling conference where we were in front of the magistrate judge. In front of the magistrate, which again, occurred long after the district court had said, I'm going to decide these issues separately myself, and pulled them back from the magistrate. We didn't know that the district court scheduled no hearing, set no schedule like that. We didn't know that the district court was going to rule. When we went to the scheduling conference, we said one of the first things we need to do is do some jurisdictional discovery. But in response to the motion to dismiss, in our reply brief, we did rely on the fact that they admitted in their papers- Those were repairs and accessories. Those don't even seem to fit conveniently within the allegation that you made at all. No, the Pegatron stuff may have been repairs and accessories, but ACI, the only thing that So those weren't repairs or accessories, and we're entitled to have all of those inferences drawn in our favor because we couldn't do any discovery on that. When the district court dismissed without prejudice, why didn't you refile with appropriate allegations or even ask the court to reconsider and allow an amendment? I don't believe the district court ruled. What's that? That, I don't know. We filed the appeal here rather than going back to the district court. Speaking of first-year law school, what are we supposed to do without a Rule 58 order of judgment? There's still no final judgment in this case, is there? I don't believe there is. No. Well, the case is closed- There's no final judgment that was ever entered. Is there? Not that I'm aware of. Can you guys stipulate the jurisdiction in this court? We will stipulate the jurisdiction in this court. Can you? I believe we can. I mean, there's nothing else going on down in the district court. It's been closed. The answer is no, you can't. We still have to independently find basis for jurisdiction. You do, but we'll stipulate among ourselves for that. Okay. Fine. Why can't this just go to California where it belongs? Because the inventor is a resident of Wyoming. That's where he lives. That's where he resides. There are infringing products being sold in Wyoming. Wyoming, they- Wyoming is lovely. I have spent a good deal of time in Star Valley, caught many fish there, but that doesn't give you a justification for jurisdiction unless you've targeted Wyoming. And where's the targeting? Well, I mean, let's go back to the Beverly Hills case, and one of the interesting issues is does Beverly Hills survive McIntyre, and I submit it does. And Beverly Hills fan, from this court, made clear that if you target a market directly or indirectly- Is Beverly Hills fan good law after McIntyre? I believe it is. But Beverly Hills was relying on this broad stream of commerce notion, which is discredited by McIntyre. No, I would disagree with you. Beverly Hills said that when you have an independent distributor, not a, when you have a distributor that's working for the manufacturer and they target Virginia, as was the case in Beverly Hills- The question is whether they targeted Virginia, and the only, remember there were a couple fans that showed up there, but all the offices, all the imports had been into New Jersey, they couldn't really tell how they got to Virginia, but the court said nonetheless, because there's a stream of commerce, we'll let it happen. Right. And because they- McIntyre discredits that reasoning a bit, doesn't it? No, because in McIntyre, first of all, it allowed jurisdictional discovery, and in McIntyre there was no allegation that the distributor was under McIntyre's control. It was a totally independent distributor. Here we- Back to Beverly Hills fan, how do we justify making this federal circuit law when it's so procedural? Why shouldn't it be, why shouldn't this be a law governed by the regional circuit? In Beverly Hills, the court addressed that and said, we want to make a uniform law for the patent infringement statute to have a uniform law of personal jurisdiction, and the federal circuit decided that issue in Beverly Hills fan. Well, and in Beverly Hills, the connection was closer than I think there is here, in all fairness. It wasn't just a few orders being shipped from some other remote distribution chain. There were distributors that were directly related, as I recall, Beverly Hills. Now, if this is a matter of degree as to facts, and I suppose when you talk about targeting, it is a matter of degree. It does seem as if the connection here is more remote than on its facts, than existed in Beverly Hills. However, we think Beverly Hills may have been affected by other chain of commerce decisions. I would submit 20 shipments to a state with the population of Wyoming of ASUS products that we know about is not insignificant. Even if we agreed with that, that only gets you one defendant, right? All the rest, you would agree, don't have that, correct? No, because ACI is the wholly owned distributor of ASUS, and under Beverly Hills fan and worldwide Volkswagen, when the manufacturer uses a distributor that they control, they're subject to personal jurisdiction. The same thing happens with Pegatron. Pegatron has a wholly owned subsidiary, PTS, that they admit made shipments to Wyoming as well, at least 12. So, it's not just the distributor, it's the same thing as in Beverly Hills fan, where you have the manufacturer. And the other thing that the Supreme Court said in McIntyre was, sometimes a defendant targets a market by sending its goods rather than its agents, and jurisdiction is proper where the defendant has targeted the form, and in the court relying on worldwide Volkswagen said that you can use the stream of commerce when consumers within the form state, when purchase products that indicate that the manufacturer made a purposeful availment when a manufacturer distributor seeks to service a given state's market. And there's no question that ASUS seeks to serve the Wyoming market. It seeks to serve every market in the United States. It doesn't carve Wyoming out. You want to save your rebuttal time, Mr. Phillips? I do. Thank you. Thank you. Mr. Lemieux? Good morning, and I'll apologize up front for my cold as I go through this. I think the court has very clearly and cleanly identified the problems here on this particular appeal. There is simply no evidence in the record of a prima facie case of personal jurisdiction that was made out in the district court. They've made a lot to do here, but we didn't get a chance to do discovery. They filed motions on this, and if the court actually looks at the docket sheet, it will see that the briefing on this motion to dismiss for lack of personal jurisdiction was closed two weeks before the initial status conference held by Magistrate Judge Scovdall. They had an opportunity at that time in opposing the motion to ask for jurisdictional discovery if they wanted it. They didn't make such a request. They provided absolutely no evidence whatsoever to contradict the motion papers that were submitted on behalf of the moving defendants. So this idea that they were somehow jipped out of their opportunity to do jurisdictional discovery simply isn't supported by the record in this case whatsoever. Actually, I think that the actual dismissal order as to some of the defendants was entered before that initial pretrial. Actually, Your Honor, since I was actually at the initial scheduling conference in Laramie that day, what happened is that Magistrate Judge Scovdall held his initial scheduling conference kind of a cattle call for all four of the cases that had been filed there in that district. That afternoon, the district court judge, Judge Friedenthal, issued her order dismissing granting our motion to dismiss for lack of personal jurisdiction. So that's why in the docket, it'll appear that the actual order that's issued by Magistrate Judge Scovdall doesn't come until March 1st, which at that time is only covering other defendants that were still in the case at that time, but not my clients. In your view, what is the correct venue for this case? It's California, Your Honor. In fact, right now, there was a declaratory relief action that was filed in California. The appellants here brought a motion to dismiss that case that was denied by the district court in California. So there is an action still pending in California. They're free to bring their infringement actions there. That's where all these defendants are actually located, or the majority of them are located. That's clearly where they focused their entry into the United States for their purposes here. So there's no prejudice to the appellants whatsoever. They're free to pursue their infringement claims in California, which is where they should have brought them in the first place. Is that case ongoing, or is it stayed pending, this determination? No, it's ongoing, Your Honor. Their motion to dismiss was decided, I think, just last week or the week before, and it was denied. But what are we supposed to make of, you know, even if you get rid of the stream of commerce theory, there were 20 actual shipments. And I know you say, well, someone else told us to do that, but they were direct shipments, drop shipments, from at least one of your clients. Well, from ACI, Your Honor, what you have over a period of six years is you have less than 20, is what the record actually shows. Drop shipments made at the request of the distributors who they normally distribute their products. The difficulty here is that, as one might guess, Wyoming, while great for fishing, isn't necessarily one of the largest consumer markets for electronics goods in the United States. So even ASUS Tech's distributors, and they have several of them, they're on their website, where you can buy products from, don't have a great distribution network in Wyoming. So as requests came in for small, de minimis things like chargers and other accessories, those distributors asked, instead of sending them to their central distribution point, which is what would be the normal course of conduct for ASUS Tech or ACI, they asked if they could simply drop ship those small, de minimis things to these customers in Wyoming. Okay, but they are actual direct shipments that the clients are aware of. You're right, Your Honor. And so is there a de minimis standard for purposeful availment? Well, I think what we have, Your Honor, is when you have specific jurisdiction, there has to be a nexus between the alleged contacts and the claims of infringement here. Here there was no nexus shown whatsoever. There was an admission on our part that we have these 20 indiscriminate contacts. There is, however, no nexus shown whatsoever by the appellants in this case, that those are connected at all to their claims of infringement. Well, the complaint alleges broadly a variety of products that would infringe, correct? The complaint, it's not really clear what the complaint actually alleges infringes. It just simply says they infringe. Well, that's all it has to say under the federal rules, isn't that correct? Well, no, because it has to actually be some identification of products. And as the law is very clear here, in order to establish jurisdiction and to meet their prima facie case for establishing personal jurisdiction, they have to make some connection between the alleged infringement that takes place and the targeted form that they're trying to bring jurisdiction in. There was none of that in this case. And that was part of the problem that the district court judge had, is that there was no allegation saying that there's even infringement going on here in Wyoming. And that's part of the problem. That's their burden, to have made that initial prima facie case, and they did not do so. If, for example, the materials of the shipping package said to the customer, when you customer in Cheyenne receive this product, you should open it and you should conduct the following test. And the tests, one may allege, are within the scope of the patent. Your answer then would be different, I suppose. I guess if there was any evidence in the record that that actually took place, Your Honor. But here we get to the question of whether or not discovery should have been permitted. Well, the problem, Your Honor, is that they didn't request discovery. I mean, they had an opportunity to do so. It's only for the first time, actually, in their reply brief to this court, that they even raised the issue. They didn't even raise the issue in their opening brief here. It suddenly, it occurred to them in their reply brief, you know, maybe we should ask for discovery here. The time for that would have been in opposing our motion in the district court. The court, at that point in time, that could have made a decision whether or not to allow discovery to decide that issue or not. They chose not to raise it at that time. But we can't simply allow them to give them forever and say, oh, by the way, maybe now we should raise this issue of discovery for the first time. Was there a counterclaim filed in the California DEC action? They have the opportunity to. The judges ordered in granting and denying their motion to dismiss, we filed declaratory relief actions for invalidity and also non-infringement. The court granted the motion to dismiss our non-infringement claims because we identified the accused products in the same way they did in the Wyoming action. The court in the California case says, well, that's not really good enough. You're not really identifying products. But what it allowed to stand was our declaratory relief action for purposes of invalidity. So they will have the opportunity, should they choose to do so, to add claims for infringement if they want to go ahead and identify which specific products they're actually accusing of infringement. Was there an action before the Wyoming action that was pending in Nevada? No. Part of the history, I mean, Mr. Phillips gave you a little bit of history. In many ways, Your Honor, that's irrelevant to this case, but there was a district court action in Utah. We went to trial approximately 15 months ago on this. Three of the patents that are alleged in this case went to trial in Utah. Jury found on behalf of my clients on two of the three patents. On the third patent, they potentially found infringement. They made some damage award. That issue is going to come up to the federal circuit on appeal because final judgment hopefully will be entered now this week, about 15 months after the case. But he's making reference to earlier litigation that's unrelated. It's related in the sense that it involves some of the same patents, but it's separate and apart from this action. Once he lost in Utah, he went to Wyoming and thought, okay, I'll try there. Maybe I can get a better jury or a better reward there, I don't know. What do you make of the fact that there's no final judgment in this case? I think, Your Honor, because it's an appealable order, I believe, that once we were dismissed, even though it was without prejudice, once we were dismissed and there's no other parties in this case, all the other parties have settled out, that that is an appealable order at that point in time. But they hadn't settled out as of the time the appeal was filed. That's correct, Your Honor. Does that matter? It normally would mean this court didn't have jurisdiction to hold their appeal at this time. We're willing to waive that defect just because we wanted to go ahead and get this issue decided rather than waiting. But they technically should have waited until they had settled with the other parties and signed that order, then what would have become a final appealable order. Just a couple of other items. Can you address the consistency of Beverly Hills' fan with McIntyre? Yeah. Part of the difficulty with McIntyre, Your Honor, as I'm sure you're all aware, is the plurality of opinion. So clearly for the four, authored by Justice Kennedy, they pretty heavily criticized the stream of commerce theory. And I think actually that is the correct way to go, that we should be looking at the contacts of each individual defendant rather than this general stream of commerce. That's a useful metaphor in some respects, but it's not very useful for actually analyzing jurisdictional contacts. Because in today's modern economy, companies are so specialized in what they do.  They make a conscious decision that we're going to distribute goods either on a regional or national basis, and they should have to live with that consequence. But doing business from the manufacturer's standpoint, they're choosing to do business with that distributor. That's the contact that should be looked at, and I think that's the contact that the McIntyre Court would have you look at. So that, for example, in Azustek, if they do business with a national distributor, and that distributor's located in St. Louis, they're making themselves amenable then to jurisdiction in St. Louis, because they're doing business with that company in St. Louis. But what they're not doing necessarily is saying, we're making ourselves amenable to jurisdiction, personal jurisdiction, everywhere that that company does business. That company's business has to be looked at separately, and I think that's what the McIntyre Court is looking at here. Is stream of commerce still potentially useful? Maybe in some circumstances, and because it is a plurality decision, it's not clear where the other members of the majority in that decision would go, depending upon the fact pattern. And I think the concurring opinion states just that, that there is too many open facts for them that make a wholesale change in the law. But I think that the four-person opinion there is clearly criticizing this idea that you can simply throw out stream of commerce as some sort of talisman, and that's sufficient there to satisfy your burden for establishing personal jurisdiction. But our obligation in the face of a plurality opinion is, under the Supreme Court's own tests and marks, that we have to take the narrowest opinion and apply that, correct? And I think that the narrowest opinion there was still that, in a circumstance like this, you could not find personal jurisdiction. If they did not find personal jurisdiction in that case, a product liability case, where somebody was actually injured by the device in the state where he wanted to bring suit, and the majority said that wasn't enough in that case because there was still no purposeful targeting of New Jersey in that case. In that sense, if that wasn't good enough there, then clearly a situation like this where you simply have nationwide sale of products, again, there is no specific targeting that's going on here. So I think the six-person, the six-justice majority in that case, would not find jurisdiction here either because there is no specific targeting going on of Wyoming. So unless Your Honors have any further questions, I have nothing further to add. Thank you, Mr. Lemieux. Mr. Phillips, you have six minutes. Thank you. I'll be brief. He says there was an unfavorable jury verdict that was, now with prejudgment interest, $1.3 million that's going to be coming up in front of the federal circuits. I assume they're going to appeal it rather than pay it. With respect to the allegations that you need to make in a patent infringement case, if you look at Form 17 in the federal rules, our complaint more than complied with Form 17. And I know there's this whole Twombly movement out there where people think you have to start pleading evidence and everything, but I would submit that our complaint more than complied with Form 17. With respect to discovery on the jurisdictional issues, we did raise that issue with the district court at the pretrial conference. The magistrate judge knew that personal jurisdiction was an issue. We asked for that discovery. We assumed there would be some communication between the magistrate judge and the district court judge. Apparently, there was not. But I think the record is clear that we did ask for that jurisdictional discovery. And then with respect to the question on whether Beverly Hills survived McIntyre, I would submit that if you look at McIntyre carefully, McIntyre heavily cites to and relies on Worldwide Volkswagen. And remember the facts of Worldwide Volkswagen. There was no question that Audi, the manufacturer, and Volkswagen of America, the importer, were subject to jurisdiction in Oklahoma. The only issue in Volkswagen was whether the car dealer and the regional distributor that the car dealer in New York in the tri-state area was subject to jurisdiction in Oklahoma. And in that case, the court basically said you can't appoint your shadow as the agent for service of process. But with respect to the manufacturer, Audi, which targeted the entire United States and which sold vehicles in Oklahoma, and with respect to Volkswagen of America, Inc., which was the exclusive distributor for Audi, there was no question that they were subject to jurisdiction in Oklahoma. And that's the same thing we have here. ASUS targets the entire United States, including Wyoming. Even though there may only be 500,000 people who live there, they still send their products to Wyoming. They have an exclusive distributor, ACI, that the record shows sent at least 20 products to Wyoming. The same thing is on the Pegatron side. What Pegatron is, is in 2007 or 2008, ASUS decided to take its research and development arm out of ASUS and make it into a separate company called Pegatron for whatever reason. Our contention is, is they knew Dr. Adams was coming after them and wanted to... That's where a lot of the infringement took place, was with the development. But the same thing happened with Pegatron. They sold at least 12 different shipments into Wyoming. So under Worldwide Volkswagen and Beverly Hills Fan and McIntyre, where McIntyre still relies on there is personal jurisdiction in Wyoming and we would request that the court remand, at a minimum, the case back to Wyoming for jurisdictional discovery. With respect to what's going on in California, on December 29th, the court found in California that there was personal jurisdiction, but dismissed the complaint with... They have 30 days to amend their complaint. We are considering appealing the jurisdictional decision in California because we don't think there is any personal jurisdiction over the inventor in California. He doesn't do any business down there. So we're going to... That's not immediately appealable, is it? Well... Once more you have a problem with jurisdiction before the court has it. It's going to have to either be a motion for reconsider or maybe an interlocutory appeal. I don't know. We're exploring our options right now. But you're right. So unless the court has any further questions, thank you very much for your consideration. Thank you, Mr. Phillips. That concludes the morning. All rise.